No. 21-3334

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| MCHENRY COUNTY and KANKAKEE COUNTY, bodies politic and corporate, | Appeal from the U.S. District Court for the Northern District of Illinois, Western Division |
| Plaintiffs-Appellants, | |
| v. | Case No. 3:21-cv-50341 |
| KWAME RAOUL, in his official capacity as Illinois Attorney General, | Judge Phillip G. Reinhard |
| Defendant-Appellee. | |

**MEMORANDUM OF LAW OF AMICUS CURIAE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF PLAINTIFFS-APPELLANTS**

Mark S. Venezia
Christopher J. Hajec
Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
T: 202.232.5590
F: 202.464.3590
gdandrea@irli.org

*Attorneys for amicus curiae*
*Immigration Reform Law Institute*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the FEDERAL RULES OF APPELLATE PROCEDURE, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: February 1, 2022            Respectfully submitted,

                              /s/ Mark S. Venezia

                              Mark S. Venezia
                              Christopher J. Hajec
                              Gina M. D'Andrea
                              Immigration Reform Law Institute
                              25 Massachusetts Ave NW, Suite 335
                              Washington, DC 20001
                              Telephone: (202) 232-5590

                              Attorneys for *Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ ii

INTEREST OF *AMICUS CURIAE*...................................................................................1

SUMMARY OF THE ARGUMENT....................................................................................1

ARGUMENT .........................................................................................................................2

    I.    THE ILLINOIS WAY FORWARD ACT IS PREEMPTED BY FEDERAL LAW...2

    II.    THE ILLINOIS WAY FORWARD ACT VIOLATES THE PRINCIPLE OF
INTERGOVERNMENTAL IMMUNITY ...........................................................................7

CONCLUSION .......................................................................................................................9

**TABLE OF AUTHORITIES**

**Cases**

*Am. Agric. Movement v. Bd. of Trade*, 977 F.2d 1147 (7th Cir. 1992) .............................................4

*Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028 (7th Cir. 2008) ...............................................3

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) ....................................................................3

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020)...................................................5, 7

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) ......................................................4

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)......................................................4, 5

*Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516 (1914) ..............7

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992).....................................................3, 4

*Geo Group v. Newsom*, 15 F.4th 919 (2021)....................................................................................6

*Indiana Bell Tel. Co., Inc. v. Indiana Util. Regulatory Com'n*, 359 F.3d 493 (7th Cir. 2004) .......5

*Mayo v. United States*, 319 U.S. 441 (1943) ....................................................................................7

*McCulloch v. Maryland*, 17 U.S. 316 (1819) ...................................................................................7

*North Dakota v. United States*, 495 U.S. 423 (1990).......................................................................7

*Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041 (7th Cir. 2013) ...............................................5

*Public Utilities Comm'n of California v. United States*, 355 U.S. 534 (1958) ...............................8

*Sanchez-Soriano v. United States*, No. 09-cv-500-JPG-PMF, 2011 U.S. Dist. LEXIS 146977 (S.D. Ill. 2011) ......................................................................................................................................5

*Savage v. Jones*, 225 U.S. 501 (1912)..............................................................................................4

*Student Loan Servicing All. v. District of Columbia*, 351 F. Supp. 3d 26 (D.D.C. 2018)...............7

*Time Warner Cable v. Doyle*, 66 F.3d 867 (7th Cir. 1995)..............................................................3

*Trump v. Vance*, 140 S. Ct. 2412 (2020) ..........................................................................................8

*Turkhan v. Perryman*, 188 F.3d 814 (7th Cir. 1999).......................................................................3

*Washington v. United States*, 460 U.S. 536 (1983) ........................................................................8

**<u>Statutes</u>**

5 ILCS 805/15(g)(1) ........................................................................................................2

5 ILCS 805/30(b) ...........................................................................................................2

8 U.S.C. § 1226 ..............................................................................................................5

8 U.S.C. § 1231(a)(2) .....................................................................................................5

8 U.S.C. § 1231(g)(1) ..................................................................................................5, 6

8 U.S.C. § 1231(g)(2) .....................................................................................................6

**<u>Constitutional Provisions</u>**

U.S. Const. art. VI, cl. 2 .................................................................................................3

**INTEREST OF *AMICUS CURIAE*[1]**

The Immigration Reform Law Institute ("IRLI") is a not for profit 501(c)(3) public interest law firm incorporated in the District of Columbia. IRLI is dedicated to achieving responsible immigration policies that serve the best interest of the nation. IRLI has litigated or filed *amicus curiae* briefs in many immigration-related cases before federal courts and administrative bodies, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 136 S. Ct. 2271 (2016); and *Arizona Dream Act Coal. v. Brewer*, 818 F.3d 101 (9th Cir. 2016). For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from the Federation for American Immigration Reform, of which IRLI is a supporting organization, because the Board considers IRLI an expert in immigration law.

**SUMMARY OF THE ARGUMENT**

The Illinois Way Forward Act ("IWFA") was enacted by Governor Pritzker in direct contravention of congressional objectives regarding alien detention established in the Immigration and Nationality Act ("INA"). Because it prohibits new cooperation between federal and state law enforcement and mandates termination of existing cooperation, the IWFA amounts to an intentional and direct obstacle to the established process and explicit goals of Congress with respect to alien detention. The IWFA provides:

> (1) No law enforcement agency, law enforcement official, or any unit of state or local government may enter into or renew any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for federal civil immigration violations.
> (2) Any law enforcement agency, law enforcement official, or unit of state or local government with an existing contract, intergovernmental agreement, or other agreement, whether in whole

---

[1] All parties have consented in writing to IRLI's *amicus* brief. This brief was not written in whole or in part by counsel for any party, and no person or entity other than *amicus*, its members, and its counsel has made a monetary contribution to the preparation and submission of this brief.

1

> or in part that is utilized to house or detain individuals for civil immigration violations shall exercise the termination provision in the agreement as applied to housing or detaining individuals for civil immigration violations no later than January 1, 2022.

5 ILCS 805/15(g)(1), (2). The IWFA further provides the Illinois Attorney General with the authority to "maintain an action for declaratory, injunctive or any other equitable relief" against any party found to be in violation of these commands. 5 ILCS 805/30(b).

Thus, Illinois has enacted a prohibition that compels state and local officials, many of whom would otherwise cooperate with federal law enforcement aims, not to offer such cooperation. This prohibition has disastrous consequences for important congressional interests in the detention of removable aliens and thus should be enjoined by this Court. By mandating the termination of existing agreements and prohibiting the use of future contracts, Illinois has intentionally created an obstacle to the enforcement of federal immigration law.

Additionally, the IWFA violates the principle of intergovernmental immunity. First, it directly regulates an exclusively federal activity—immigration detention—by prohibiting the federal government from contracting for alien detention services. Second, the IWFA openly discriminates against both the federal government and its contractors (including Plaintiff-Appellants) by prohibiting contracts for alien detention while allowing such agreements in other areas. For this reason, too, the IWFA should be struck down by this Court.

## <u>ARGUMENT</u>

### I. THE ILLINOIS WAY FORWARD ACT IS PREEMPTED BY FEDERAL LAW

The District Court erred when it granted Defendant-Appellee's motion to dismiss. The IWFA is preempted by federal law and should be struck down by this Court. The federal government's "broad, undoubted power over the subject of immigration is well-established." *Arizona v. United States*, 567 U.S. 387, 394 (2012). *See also, Turkhan v. Perryman*, 188 F.3d 814,

828 (7th Cir. 1999) ("Congress has very broad powers in the immigration and naturalization arena[.]") (internal citation omitted). The INA reflects Congress's intention that state and local officials cooperate with federal officials to regulate immigration. In fact, Congress explicitly expressed that cooperation between such entities was necessary with respect to alien detention. 8 U.S.C. § 1103(a)(11)(B) (authorizing the Attorney General to work with state and local governments to establish alien detention centers). Because the IWFA prohibits such cooperation and requires termination of any existing cooperative agreements, it is conflict preempted and should have been enjoined by the District Court.

The Supremacy Clause ensures that where a conflict arises between state and federal law, federal law prevails. U.S. Const. art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding."). Congress can override state and local laws because "[t]he Supremacy Clause provides a clear rule . . . Congress has the power to preempt state law." *Arizona*, 567 at 399. *See also Time Warner Cable v. Doyle*, 66 F.3d 867, 874 (7th Cir. 1995) ("Pursuant to this authority, the Congress, in the exercise of the legislative authority granted to it by the Constitution, may preempt state law.").

Preemption can be express or implied. *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal citation and quotation marks omitted) ("Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."). *See also Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) ("Preemption can take on three different forms: express preemption, field preemption, and conflict preemption."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) ("A federal law may preempt a state law expressly, impliedly through the doctrine of conflict preemption, or through the doctrine of field (also known as

complete) preemption."). An implied conflict may arise where "compliance with both federal and state regulations is a physical impossibility" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 300. "If the purpose of the act cannot be otherwise accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912). Determination of an unconstitutional impediment to federal law is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000); *see also Gade*, 505 U.S. at 98 ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole.").

The doctrine of obstacle preemption ensures that states may not invoke their authority as a sovereign to legislate in a way that undermines congressional goals. Cooperation between state and federal officials is essential to our system of dual sovereignty. Preemption ensures that states do not use their own sovereignty to circumvent federal law. As the Second Circuit has explained, "[t]he potential for deadlock thus inheres in dual sovereignties, but the Constitution has resolved that problem with the Supremacy Clause, which bars states from taking actions that frustrate federal laws and regulatory schemes." *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (internal citations omitted). Thus, a state law will be obstacle preempted where it blocks "the accomplishment and execution of the full purposes and objectives of Congress as manifested in the language, structure, and underlying goals of the federal statute at issue." *Am. Agric. Movement v. Bd. of Trade*, 977 F.2d 1147, 1154 (7th Cir. 1992) (internal citation and quotation marks omitted).

Determining "[w]hat is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects[.]" *Crosby*, 530 U.S. at 373. To succeed in an obstacle preemption claim, "[t]he challenger must show that applying the state law would do major damage to clear and substantial federal interests." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020) (internal citation and quotation marks omitted).

Furthermore, under obstacle preemption, "[a] state law is . . . pre-empted if it interferes with the methods by which the federal statute was designed to reach the goal." *Indiana Bell Tel. Co., Inc. v. Indiana Util. Regulatory Com'n*, 359 F.3d 493, 497 (7th Cir. 2004). Thus, "conflict preemption applies not only to conflicts between federal and state substantive rules, but also to state rules that interfere with processes established by federal acts." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1051 (7th Cir. 2013).

Congress provided the Attorney General with the authority to arrest and detain aliens pending removal and mandated the detention of criminal aliens. *See, e.g.,* 8 U.S.C. § 1226; 8 U.S.C. § 1231(a)(2). The INA instructs the Attorney General to "arrange for appropriate places of detention for aliens." 8 U.S.C. § 1231(g)(1). *See also Sanchez-Soriano v. United States*, No. 09-cv-500-JPG-PMF, 2011 U.S. Dist. LEXIS 146977, at *5–6 (S.D. Ill. 2011) (internal citations omitted) ("Federal law mandates a period of detention for aliens during the removal period. The Attorney General has a statutory duty to arrange for appropriate places of detention."). The statutory language clearly establishes that, in the absence of suitable federal detention centers, the Attorney General has the power to go outside the federal infrastructure and "expend . . . amounts necessary to acquire, build, repair and operate facilities . . . necessary for detention[.]" 8 U.S.C. §

1231(g)(1).  The statute reflects clearly that Congress's objective was to have state and local cooperation with respect to alien detention.

Congress's goal of cooperation is also reflected in the INA's preference for the use of existing facilities over construction of new detention centers.  8 U.S.C. § 1231(g)(2) (instructing immigration officials to "consider the availability for purchase or lease of any existing prison, jail detention center or other comparable facility.").  This purpose is achieved by the authorization "to enter into a cooperative agreement . . . to establish acceptable conditions of confinement and detention services in any State or unit of local government which agrees to provide guaranteed bed space" for detained aliens.  8 U.S.C. § 1103(a)(11)(B).  The inclusion of these provisions in the INA makes clear that Congress's objective was for federal and state officials to work together to find suitable housing for detainable aliens.

As the Ninth Circuit recently explained, the detention of aliens under the INA is often accomplished entirely through contracts such as those cancelled by the IWFA.  *Geo Group v. Newsom*, 15 F.4th 919 (2021).  The Court struck down the California law at issue, stating that "AB 32 cannot stand because it conflicts with this federal power and discretion given to the Secretary in an area that remains in the exclusive realm of the federal government.  It bars the Secretary from doing what federal immigration law explicitly permits him or her to do."  *Id*. at 935 (citation omitted).  The IWFA's cancellation of and ban on further contracts is every bit as much of an interference with the Secretary's explicitly-granted discretion.

The IWFA obstructs congressional goals by prohibiting Plaintiffs-Appellants and others from voluntarily cooperating with the established process for detention of detainable aliens under the INA.  The IWFA is at odds with congressional purposes and creates an obstacle to them by prohibiting and terminating this voluntary cooperation.  Patently, the IWFA does "major damage

to clear and substantial federal interests" by effectively eliminating the federal government's ability to house detainable aliens in the state of Illinois. *C.Y. Wholesale, Inc.*, 965 F.3d at 547. Finally, by prohibiting and cancelling federal detention contracts, Illinois has created a direct and purposeful obstacle to the process established by the Attorney General for the achievement of congressional alien detention goals.

## II. THE ILLINOIS WAY FORWARD ACT VIOLATES THE PRINCIPLE OF INTERGOVERNMENTAL IMMUNITY

The Supreme Court has long upheld the doctrine of intergovernmental immunity, which provides that a state law is invalid if it is found to "retard, impede, burden or in any manner control, the operations of the constitutional laws enacted by congress[.]" *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819). *See also Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914) (explaining that the Constitution protects "the entire independence of the General Government from any control by the respective States."); *Student Loan Servicing All. v. District of Columbia*, 351 F. Supp. 3d 26, 74 (D.D.C. 2018) ("Intergovernmental immunity prevents states from regulating the federal government's operations or its property.") (internal citation and quotation marks omitted). Thus, under this doctrine, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943).

Intergovernmental immunity necessarily extends to those parties the government works with to enforce and administer federal law. *See North Dakota v. United States*, 495 U.S. 423, 435 (1990) (explaining that a state law is invalid "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals."). The Supreme Court has recognized the right of the federal government to conduct operations, including with outside actors, without interference from the states. *See Public Utilities Comm'n of California v. United*

*States*, 355 U.S. 534, 540 (1958) (striking down a California law attempting to regulate shipping rates because "Congress has provided a comprehensive policy governing procurement."). Because the IWFA prohibits cooperation with the federal government and requires the cancellation of existing detention agreements, the IWFA impermissibly "control[s] the operations of the constitutional laws enacted by Congress[.]" *Trump v. Vance*, 140 S. Ct. 2412, 2425 (2020).

The IWFA does more than interfere with government operations—it openly discriminates against the federal government and its contractors. The Supreme Court has explained that a "State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536, 544–45 (1983). Here, Illinois has enacted a prohibition on intergovernmental agreements with the federal government while permitting the state and its counties to participate in detention service agreements with others. By permitting certain detention agreements while excluding the federal government, Illinois has openly and intentionally discriminated against the latter. As a regulation of federal operations that discriminates against the federal government and its contractors, the IWFA should be struck down.

## **CONCLUSION**

For the foregoing reasons, the judgment of the court below should be reversed.

Dated: February 1, 2022

/s/ Mark S. Venezia

Mark S. Venezia
Christopher J. Hajec
Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
T: (202) 232-5590
F: (202) 464-3590
gdandrea@irli.org

*Attorneys for amicus curiae*
*Immigration Reform Law Institute*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief of *amicus curiae* complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) because it contains less 15 pages. This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(a), because it has been prepared in a proportionally spaced typeface (12-point Times New Roman) using Microsoft Word.

 /s/ Mark S. Venezia

Mark S. Venezia

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing brief of *Amicus Curiae* Immigration Reform Law Institute in support of Plaintiff-Appellants was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using CM/ECF on February 1, 2022. All participants in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

 /s/ Mark S. Venezia

Mark S. Venezia